IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CASSELS BROCK & BLACKWELL LLP, | |
| Appellant, | No. 25-CV-3034-CJW-KEM |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| VEROBLUE FARMS USA, INC., | |
| Appellee. | |

_____

The main dispute between the parties in this bankruptcy appeal is whether the bankruptcy court could find that Appellant Cassels Brock & Blackwell LLP, a law firm, failed to meet its burden of proving the attorney-client privilege applied to client files (potentially) involving a third party. Cassels argues that only a client can waive the attorney-client privilege, not a lawyer, so its actions (such as producing a deficient privilege log) cannot be considered in finding the attorney-client privilege inapplicable. Cassels moves to stay the enforcement of the bankruptcy court's summary-judgment ruling requiring it to produce around 7,000 documents it claims are attorney-client privileged pending this appeal. I find that Cassels conflates the waiver doctrine with its burden of proving privilege and **deny** the motion to stay. Doc. 6.

## I. BACKGROUND

Appellee VeroBlue Farms USA, Inc., (VBF USA) filed for Chapter 11 bankruptcy in 2018. It initiated an adversary proceeding against Cassels in 2019, seeking client files

involving Cassels's legal representation of VBF USA or VBF Canada[1] (VBF Canada was the parent company of VBF USA at its inception and is currently a minority shareholder). Cassels resisted on the grounds that it represented only VBF Canada and that the files were subject to the attorney-client privilege.

Meanwhile, VBF USA filed a lawsuit against the Founders of VBF USA and VBF Canada, which is currently pending in the Northern District of Texas and set for bench trial on November 3, 2025.[2] As part of that lawsuit, VBF USA moved to compel the Founders to produce all communications with Cassels.[3] The court denied the motion, holding that the Founders appropriately limited documents produced to those involving VBF USA, rather than Cassels's representation of related entities or the Founders personally.[4] The court adopted the reasoning in the Founders' resistance.[5] The Founders' resistance argued that the request for production was overbroad because Cassels had represented the Founders in transactions that did not involve VBF USA, and thus, the request encompassed irrelevant, privileged documents.[6] The Founders noted they had agreed to either produce responsive documents related to VBF USA or else log those documents on a privilege log.[7] The Founders asserted VBF USA did not challenge the Founders limiting their production in this manner, but rather, questioned whether the Founders had truly produced all responsive documents involving VBF USA (and the

---

[1] As in the bankruptcy court, VBF Canada refers to VeroBlue Farms, Inc.

[2] *VeroBlue Farms USA Inc. v. Wulf*, 19-cv-764 (N.D. Tex.).

[3] *See id.*, Doc. 437 (Nov. 8, 2021) (order on motion to compel).

[4] *Id.*

[5] *Id.*

[6] *Id.*, Doc. 427 (Aug. 27, 2021).

[7] *Id.*

Founders set forth why VBF USA's evidence did not show missing documents).[8]

In the bankruptcy court proceedings, VBF USA moved to compel discovery that Cassels claimed was privileged without producing a privilege log. *See* Doc. 2-10 at 220-243. The bankruptcy court ordered Cassels to produce a privilege log, and when it still refused to do so, held Cassels in contempt. *Id*. Cassels ultimately produced a privilege log. *Id*. The court received the documents for in camera review and set an evidentiary hearing on the privilege issue. *Id*.

In October 2024, prior to the evidentiary hearing, the bankruptcy court issued a "ruling on attorney-client privilege issues."[9] The order addressed "(1) whether the attorney-client privilege has properly been asserted at all; and (2) whether Cassels'[s] actions, including failing to file a proper privilege log, . . . waived the privilege."[10] The bankruptcy court rejected VBF USA's argument that a law firm cannot raise attorney-client privilege and that only VBF Canada (rather than Cassels, its counsel) could claim privilege over the documents at issue. The bankruptcy court also addressed the parties' waiver arguments:

> VBF [USA] next argues that Cassels, through both its affirmative conduct and its failure to act in this case, has waived the attorney-client privilege. Cassels responds by asserting that "Debtors' recognition that the attorney-client privilege belongs to the client and not to Cassels" means Cassels could never waive the privilege, and thus "renders the remainder of Debtors' Brief seeking to turn an alleged discovery violation into dispositive relief without support and no further response is necessary." The Court rejects this simplistic argument for the same reasons noted above. Cassels can and did assert the privilege—and thus can also waive it.[11]

---

[8] *Id.*

[9] Doc. 2-9 at 165-172.

[10] *Id*.

[11] *Id*.

The bankruptcy court noted that it had "previously found [in its contempt ruling] that Cassels had impliedly waived the privilege by . . . failing to provide a privilege log to accompany the assertion of the privilege."[12] It rescinded this waiver finding since Cassels had since provided a privilege log. The court noted that questions "remain on whether the privilege log is sufficient based on the facts of the case" and that it would decide "after the evidentiary hearing . . . whether there is a basis for the assertion of the attorney client privilege on all documents (thirty-one boxes) identified as being covered by the privilege."[13]

On April 18, 2025, the bankruptcy court granted summary judgment to VBF USA in the adversary proceeding after an evidentiary hearing.[14] The bankruptcy court held that a fact issue existed on whether an attorney-client relationship ever existed between Cassels and VBF USA. As such, the bankruptcy court denied summary judgment to VBF USA on its claims for turnover under 11 U.S.C. § 542(a) and state-law conversion, since whether the client files were VBF USA's property depended on the existence of an attorney-client relationship. The court recognized, however, that no such relationship was necessary for a turnover claim under 11 U.S.C. § 542(e), which provides:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.[15]

The court held that the client files "relat[ed] to [VBF USA's] property or financial affairs," since VBF USA's property included its interests in causes of action, such as its

---

[12] *Id*.

[13] *Id*.

[14] Doc. 2-10 at 220-243.

[15] *Id*.

lawsuits or potential lawsuits against Cassels and the Founders.[16] Thus, the court held the files were subject to turnover unless "[s]ubject to any applicable privilege."[17]

The bankruptcy court recognized that Cassels bore the burden of proving the files were attorney-client privileged. The court ultimately concluded Cassels had failed to do so. The court noted Cassels's privilege log (only produced after an order to compel and being held in contempt) "contain[ed] no explanatory information about the contents of the documents or any indication that the communications were intended to be confidential in the first place."[18] Cassels had produced the nearly 7,000 documents for in camera review—via 39 4-inch binders—and the court's review showed "[a] significant portion [we]re . . . not privileged," as they had already been produced or used as exhibits by the parties.[19] The court's review also revealed documents related to VBF USA, and the court noted at the evidentiary hearing, Cassels could not answer the court's questions about "why those should be considered privileged and withheld from VBF [USA]."[20] The court concluded:

> Cassels has not offered any other relevant information for the Court to make a meaningful determination as to which documents could or should be protected by the attorney-client privilege. It simply—and wrongly—relied on a blanket assertion of privilege. In short, Cassels has not shown that each of the documents—or any document individually—contained confidential attorney-client communications made for the purpose of receiving legal advice. Because Cassels has failed to carry its burden despite numerous opportunities, it has waived its privilege claim.[21]

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

The court therefore granted summary judgment to VBF USA on its turnover claim under § 542(e).

Cassels moved in the bankruptcy court for a stay pending appeal.[22] Cassels cited factors to consider in granting a stay of discovery, which included "whether there is a strong showing that a claim is unmeritorious," the risk of unfair prejudice to the opposing party, the breadth of discovery and burden of responding to it, the complexity of the action, stage of litigation, and conservation of judicial resources.[23] VBF USA resisted, arguing that Cassels cited the wrong standard and that the factors to stay pending appeal should be considered instead.[24] On June 10, 2025, the bankruptcy court denied the motion to stay without opinion after a hearing.[25]

Cassels appealed the bankruptcy court's summary-judgment order to this court. Doc. 1. On July 9, 2025, it moved to stay enforcement of the bankruptcy court order pending appeal. Doc. 6. Its opening brief on appeal was due a few days later. Doc. 7. VBF USA filed a resistance (Doc. 8) to the motion to stay, and Cassels filed a reply (Doc. 9).

## II. DISCUSSION

Federal Rule of Bankruptcy Procedure 8007 governs motions to stay pending a bankruptcy appeal. The rule provides that a party must first move for a stay in the bankruptcy court but then a stay motion "may be filed in the court where the appeal is pending."[26] By rule, the motion must "state whether the [bankruptcy] court has ruled on

---

[22] Doc. 2-11 at 4-7.

[23] *Id.*

[24] *Id.* at 41-60.

[25] *Id.* at 61-62.

[26] **Fed. R. Bankr. P. 8007(a)(1)(A), (b)(1)**.

[the motion]" and "any reasons given for the ruling,"[27] as well as provide "(A) the reasons for granting the relief requested and the facts relied on; (B) affidavits or other sworn statements supporting facts subject to dispute; and (C) relevant parts of the record."[28]

The parties agree on the four-factor test that applies when determining whether to issue a stay pending a bankruptcy appeal:

> (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[29]

The first factor is the most important, followed by the second.[30] "[T]he absence of a likelihood of success on the merits strongly suggests that [a stay] should be denied," while "a likelihood of success on the merits only justifies [a stay] if there is a risk of irreparable harm . . . ."[31]

The parties do not discuss the deference, if any, this court owes to the bankruptcy court's denial of the stay. Courts are split on this issue.[32] The Eighth Circuit generally

---

[27] **Fed. R. Bankr. P. 8007(b)(2)(B)**.

[28] **Fed. R. Bankr. P. 8007(b)(3)**.

[29] *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 771 (3d Cir. 2019) (cleaned up) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *accord In re McQuillen Place Co.*, No. 20-CV-2040-CJW-KEM, 2020 WL 5753201, at *4 (N.D. Iowa Sept. 25, 2020).

[30] *S.S. Body Armor*, 927 F.3d at 772.

[31] *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009) (addressing four factors in preliminary-injunction context).

[32] *See, e.g.*, *In re Jacobs*, No. 24-CV-429, 2024 WL 4664403, at *2 (N.D. Okla. Nov. 4, 2024) (collecting cases and recognizing split); *Ramos v. Weatherford*, No. 6:15-cv-871-Orl-41, 2015 WL 12765453, at *2 (M.D. Fla. July 16, 2015) (same).

reviews a "bankruptcy court's factual determinations for clear error, and its legal determinations *de novo*."[33] Some courts apply this standard to motions to stay bankruptcy orders and note the ultimate balancing decision is subject to abuse-of-discretion review.[34] Other courts apply de novo review, reasoning that Rule 8007 contemplates some instances in which motions to stay are filed in the district court originally or simultaneously with stay motions filed in the bankruptcy court,[35] so the stay motion in the district court is its own motion rather than an appeal of a bankruptcy court order entitled to discretion.[36] Because I reach the same outcome under any standard of review, I need not weigh in on this split.

---

[33] *In re Ungar*, 633 F.3d 675, 679 (8th Cir. 2011).

[34] *See* **Rosenthal v. NewRez LLC** (*In re Rosenthal*), 782 F. Supp. 3d 1031, 1037 (W.D. Wash. 2025), *reconsideration denied,* No. 25-cv-00828, 2025 WL 1696924 (June 17, 2025); **DBD Credit Funding LLC v. Silicon Lab'ys, Inc.**, No. 16-CV-05111-LHK, 2016 WL 6893882, at *5 (N.D. Cal. Nov. 23, 2016); *see also* **In re Stratford Hotel Co.**, 120 B.R. 515, 516 (E.D. Mo. 1990) (generally noting abuse of discretion review); *cf.* **S.S. Body Armor**, 927 F.3d at 772-73 (noting court generally reviewed district court's denial of stay of bankruptcy court decision for the *district court's* abuse of discretion, except the likelihood-of-success-on-the-merits factor was reviewed de novo as a purely legal determination). In analyzing the same four-factor test in the context of a preliminary injunction, the Eighth Circuit has reviewed the underlying court's "material factual findings for clear error, its legal conclusions de novo, and the court's equitable judgment—the ultimate decision to grant the injunction—for an abuse of discretion"). **Heartland Acad. Cmty. Church v. Waddle**, 335 F.3d 684, 689-90 (8th Cir. 2003).

[35] **Fed. R. Bankr. P. 8007(b)(2)** ("The motion must: (A) show that moving first in the bankruptcy court would be impracticable; or (B) if a motion has already been made in the bankruptcy court, state whether the court has ruled on it, and if so, state any reasons given for the ruling.").

[36] *In re Jacobs*, 2024 WL 4664403, at *2; **Weinhold v. Carolina Pres. Partners**, No. 19-CV-2710-T-35, 2019 WL 13245886, at *1 (M.D. Fla. Dec. 20, 2019); *cf.* **Does 1-3 v. Mills**, 39 F.4th 20, 24 (1st Cir. 2022) (applying de novo standard of review to motion to stay district court decision under Federal Rule of Appellate Procedure with similar wording to Bankruptcy Rule 8007); **Priorities USA v. Nessel**, 978 F.3d 976, 982 (6th Cir. 2020) (same).

Before analyzing the four factors, I briefly address VBF USA's argument that Cassels procedurally defaulted the motion to stay. As noted, Rule 8007 generally requires that motions to stay first be filed in the district court. VBF USA argues that Cassels failed to follow this requirement, because although it filed a motion to stay the bankruptcy court's decision (raising much of the same arguments) in the bankruptcy court, it cited the wrong standard to apply. VBF USA argues that Cassels setting out the wrong standard below is akin to not filing a motion at all. This argument is a nonstarter. Unsurprisingly, the only cases VBF USA cites in support generally recite the four-factor test or involve the actual failure to file a motion to stay in the bankruptcy court.

As to the likelihood of success on the merits, the parties agree that the bankruptcy court correctly applied federal common law in determining the application of attorney-client privilege. In arguing that the bankruptcy court got it wrong, Cassels cites cases generally noting that the attorney-client privilege belongs to the client and that only the client can waive the privilege. But cases recognize both that the privilege belongs to the client *and* that "the party seeking to assert the privilege . . . has the burden of showing that the privilege applies."[37] Only two of Cassels's cited cases involve an attorney raising attorney-client privilege on behalf of the client, and neither shed any light on the waiver versus burden issue.[38]

---

[37] *United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020).

[38] *Swidler & Berlin v. United States*, 524 U.S. 399, 401-02, 410 (1998) (when attorney raised attorney-client privilege upon death of client, addressing only whether the privilege survived client's death (and holding it did)); *Schwimmer v. United States*, 232 F.2d 855, 859-60, 863-65 (8th Cir. 1956) (when grand jury subpoena issued to storage company housing attorney's files, and attorney objected on basis of attorney-client privilege, the court recognized that "the attorney has the duty . . . to make assertion of the privilege"; the court held that three of attorney's clients had waived privilege in grand jury proceedings, and documents related to these clients should be produced, but only after the attorney had the opportunity to review the documents so as to be able to assert "[w]hether a separate attorney-client relationship existed as to any . . . related person[s] or corporation[s]" who had not waived the privilege).

Read in context, it appears to this court that the bankruptcy court found Cassels had failed to meet its burden of proof, rather than that it had waived the privilege (although admittingly, the bankruptcy court, like other cases, used burden and waiver interchangeably). The court found that Cassels had not proved the existence of the attorney-client privilege, since it asserted blanket privilege over all the documents, but the court's in camera review revealed that many of the documents were either not confidential or involved entities to which Cassels had not proven an attorney-client relationship. The court also noted Cassels's privilege log provided inadequate information to show privilege.

Cassels does not challenge these findings. Instead, Cassels argues as a matter of law that it cannot waive attorney-client privilege because it is not the client. Cassels misses that "[a]lthough the client owns the attorney-client privilege, it is still the burden of . . . the party asserting the privilege . . . to prove that an attorney-client relationship existed . . . and that the privilege applied to each withheld document."[39] The likelihood

---

[39] ***Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC***, 343 F.R.D. 460, 463, 467-69 (S.D.N.Y. 2023) (cleaned up) (quoting ***Olmos v. David B. Giles P.C.***, No. 22-CV-77-D, 2022 WL 3448641, at *2 (N.D. Tex. Aug. 17, 2022)) (applying Texas law and holding that law firm failed to prove existence of attorney-client privilege for subpoenaed documents when law firm relied on "conclusory" assertions of privilege, court lacked explanation of law firm's relationship to people in the documents, and court lacked "evidence explaining these documents and the information contained therein" to show most documents were privileged after its in camera review—despite providing law firm "multiple opportunities" to meet its burden—and requiring law firm to produce most subpoenaed documents); *see also* ***In re Universal Serv. Fund Tel. Billing Pracs. Litig.***, No. 02-1468, 2006 WL 8440450, at *1, *3-7, *11 (D. Kan. Oct. 4, 2006) (holding that for some subpoenaed documents, law firm "failed to provide the court with adequate information" in privilege log to show attorney-client relationship and that documents must therefore be produced; like the bankruptcy court, the court used the term "waiver" at times even though its ruling actually appeared to rest on burden); **Restatement (Third) of the Law Governing Lawyers** § 86 (American Law Institute 2000) (stating a "lawyer . . . from whom a privileged communication is sought must invoke the privilege"; a "person invoking the privilege must . . . demonstrate each element of the privilege"; and a "person invoking . . . waiver" of privilege must "demonstrate each element of the waiver" (as a separate matter from the burden

of success factor weighs in favor of VBF USA and denying a stay.

The other factors weigh slightly more in favor of Cassels and a stay than VBF USA. If Cassels is required to produce documents ultimately found privileged after appeal, it "will suffer immediate, irreparable harm," as "[o]nce information subject to the attorney-client privilege . . . is disclosed, the right of nondisclosure cannot be restored."[40] On the other hand, "any subsequent review that somehow finds the documents protected could be . . . remedied" in part by an order prohibiting VBF USA's further use of the documents.[41] VBF USA argues that it is harmed by a stay because the documents could be relevant to its Texas litigation against the Founders, set for bench trial this November; but the trial court in that case already denied VBF USA's motion to compel these documents, suggesting they lacked relevance. VBF USA also argues further delay causes it harm because the purpose of gathering these documents is to investigate any potential causes of action it may have against Cassels and other entities, and the statute of limitations continues to run on any potential claims. This argument holds a little more weight, but is ultimately not as compelling as the harm to Cassels in disclosing potentially privileged documents. Finally, I find the public-interest factor neutral—Cassels generally argues the public has an interest in protecting the attorney-client privilege, but the public also has an interest in not "expanding the privileges beyond their

---

of proving privilege)); *see also generally* **St. Paul Reins. Co. v. Com. Fin. Corp.**, 197 F.R.D. 620, 628 (N.D. Iowa 2000) ("The party asserting the privilege 'meets its burden of providing a factual basis for asserting the privileges when it produces a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its counsel.'" (cleaned up) (quoting **Rabushka ex rel. United States v. Crane Co.**, 122 F.3d 559, 565 (8th Cir. 1997))).

[40] **City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart, Inc.**, No. 12-cv-5162, 2017 WL 5016062, at *1 (W.D. Ark. June 1, 2017); *accord* **United States v. Diageo, Inc.**, No. Civ.02-MC-11, 2003 WL 21254778, at *1 (D. Minn. Apr. 29, 2003).

[41] **United States ex rel. Barko v. Halliburton Co.**, 4 F. Supp. 3d 162, 169 (D.D.C. 2014).

established scope"[42] and the "prompt and final determination of [cases]."[43]

Ultimately, I assign the most weight to the unlikelihood that Cassels's appeal will be successful and find this factor cannot be outweighed by the danger of irreparable harm to Cassels (which is lessoned by the fact that I do not find Cassels likely to be successful on appeal). Balancing the factors, I do not find a stay pending appeal appropriate.

### III. CONCLUSION

I **DENY** the motion to stay pending appeal (Doc. 6).

**SO ORDERED** on September 15, 2025.

_Kelly K.E. Mahoney_
Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[42] *United States v. Tel. & Data Sys., Inc.*, No. 02-C-0030-C, 2002 WL 31367952, at *4 (W.D. Wis. Aug. 21, 2002).

[43] *United States ex rel. Barko*, 4 F. Supp. 3d at 170.