IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CASSELS BROCK & BLACKWELL LLP, <br><br> Appellant, <br><br> vs. <br><br> VEROBLUE FARMS USA, INC., <br><br> Appellee. | No. 25-CV-3034-CJW-KEM <br><br> **REPORT AND RECOMMENDATION** |

_____

Appellant Cassels Brock & Blackwell LLP, a law firm, challenges a bankruptcy court order requiring it to produce nearly 7,000 documents to which it raised a blanket claim of attorney-client privilege. Cassels argues that only a client can waive the attorney-client privilege, not a lawyer, so its actions (such as producing a deficient privilege log, despite numerous opportunities for correction) cannot be considered in finding the attorney-client privilege inapplicable. I find that Cassels conflates the waiver doctrine with its burden of proving privilege and recommend **affirming** the bankruptcy court's decision.

### *I. BACKGROUND*

I previously set forth the history of this case when ruling on the motion to stay:

> Appellee VeroBlue Farms USA, Inc., (VBF USA) filed for Chapter 11 bankruptcy in 2018. It initiated an adversary proceeding against Cassels in 2019, seeking client files involving Cassels's legal representation of VBF USA or VBF Canada[1] (VBF Canada was the parent company of VBF USA at its inception and is currently a minority shareholder). Cassels resisted

---

[1] As in the bankruptcy court, VBF Canada refers to VeroBlue Farms, Inc.

on the grounds that it represented only VBF Canada and that the files were subject to the attorney-client privilege.

Meanwhile, VBF USA filed a lawsuit against the Founders of VBF USA and VBF Canada, which is currently pending in the Northern District of Texas . . . .[2] As part of that lawsuit, VBF USA moved to compel the Founders to produce all communications with Cassels.[3] The court denied the motion, holding that the Founders appropriately limited documents produced to those involving VBF USA, rather than Cassels's representation of related entities or the Founders personally.[4] The court adopted the reasoning in the Founders' resistance.[5] The Founders' resistance argued that the request for production was overbroad because Cassels had represented the Founders in transactions that did not involve VBF USA, and thus, the request encompassed irrelevant, privileged documents.[6] The Founders noted they had agreed to either produce responsive documents related to VBF USA or else log those documents on a privilege log.[7] The Founders asserted VBF USA did not challenge the Founders limiting their production in this manner, but rather, questioned whether the Founders had truly produced all responsive documents involving VBF USA (and the Founders set forth why VBF USA's evidence did not show missing documents).[8]

In the bankruptcy court proceedings, VBF USA moved to compel discovery that Cassels claimed was privileged without producing a privilege log. *See* Doc. 2-10 at 220-243. The bankruptcy court ordered Cassels to produce a privilege log, and when it still refused to do so, held Cassels in contempt. *Id.* Cassels ultimately produced a privilege log. *Id.* The court received the documents for in camera review and set an evidentiary hearing on the privilege issue. *Id.*

---

[2] ***VeroBlue Farms USA Inc. v. Wulf***, 19-cv-764 (N.D. Tex.).

[3] *See id.*, Doc. 437 (Nov. 8, 2021) (order on motion to compel).

[4] ***Id.***

[5] ***Id.***

[6] ***Id.***, Doc. 427 (Aug. 27, 2021).

[7] ***Id.***

[8] ***Id.***

In October 2024, prior to the evidentiary hearing, the bankruptcy court issued a "ruling on attorney-client privilege issues."[9] The order addressed "(1) whether the attorney-client privilege has properly been asserted at all; and (2) whether Cassels'[s] actions, including failing to file a proper privilege log, . . . waived the privilege."[10] The bankruptcy court rejected VBF USA's argument that a law firm cannot raise attorney-client privilege and that only VBF Canada (rather than Cassels, its counsel) could claim privilege over the documents at issue. The bankruptcy court also addressed the parties' waiver arguments:

> VBF [USA] next argues that Cassels, through both its affirmative conduct and its failure to act in this case, has waived the attorney-client privilege. Cassels responds by asserting that "Debtors' recognition that the attorney-client privilege belongs to the client and not to Cassels" means Cassels could never waive the privilege, and thus "renders the remainder of Debtors' Brief seeking to turn an alleged discovery violation into dispositive relief without support and no further response is necessary." The Court rejects this simplistic argument for the same reasons noted above. Cassels can and did assert the privilege—and thus can also waive it.[11]

The bankruptcy court noted that it had "previously found [in its contempt ruling] that Cassels had impliedly waived the privilege by . . . failing to provide a privilege log to accompany the assertion of the privilege."[12] It rescinded this waiver finding since Cassels had since provided a privilege log. The court noted that questions "remain on whether the privilege log is sufficient based on the facts of the case" and that it would decide "after the evidentiary hearing . . . whether there is a basis for the assertion of the attorney client privilege on all documents (thirty-one boxes) identified as being covered by the privilege."[13]

---

[9] Doc. 2-9 at 165-172.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

On April 18, 2025, the bankruptcy court granted summary judgment to VBF USA in the adversary proceeding after an evidentiary hearing.[14] The bankruptcy court held that a fact issue existed on whether an attorney-client relationship ever existed between Cassels and VBF USA. As such, the bankruptcy court denied summary judgment to VBF USA on its claims for turnover under 11 U.S.C. § 542(a) and state-law conversion, since whether the client files were VBF USA's property depended on the existence of an attorney-client relationship. The court recognized, however, that no such relationship was necessary for a turnover claim under 11 U.S.C. § 542(e), which provides:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.[15]

The court held that the client files "relat[ed] to [VBF USA's] property or financial affairs," since VBF USA's property included its interests in causes of action, such as its lawsuits or potential lawsuits against Cassels and the Founders.[16] Thus, the court held the files were subject to turnover unless "[s]ubject to any applicable privilege."[17]

The bankruptcy court recognized that Cassels bore the burden of proving the files were attorney-client privileged. The court ultimately concluded Cassels had failed to do so. The court noted Cassels's privilege log (only produced after an order to compel and being held in contempt) "contain[ed] no explanatory information about the contents of the documents or any indication that the communications were intended to be confidential in the first place."[18] Cassels had produced the nearly 7,000 documents for in camera review—via 39 4-inch binders—and the court's review showed "[a] significant portion [we]re . . . not privileged," as they

---

[14] Doc. 2-10 at 220-243.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

had already been produced or used as exhibits by the parties.[19] The court's review also revealed documents related to VBF USA, and the court noted at the evidentiary hearing, Cassels could not answer the court's questions about "why those should be considered privileged and withheld from VBF [USA]."[20] The court concluded:

> Cassels has not offered any other relevant information for the Court to make a meaningful determination as to which documents could or should be protected by the attorney-client privilege. It simply—and wrongly—relied on a blanket assertion of privilege. In short, Cassels has not shown that each of the documents—or any document individually—contained confidential attorney-client communications made for the purpose of receiving legal advice. Because Cassels has failed to carry its burden despite numerous opportunities, it has waived its privilege claim.[21]

The court therefore granted summary judgment to VBF USA on its turnover claim under § 542(e). Doc. 13.

Cassels appealed the bankruptcy court's summary-judgment order to this court. Doc. 1. The parties briefed the issue (Docs. 7, 10, 11), and the Honorable C.J. Williams, Chief United States District Judge for the Northern District of Iowa, referred this case to me for a report and recommendation. Cassels moved to stay enforcement of the bankruptcy court order pending appeal, which I denied and the district court affirmed, finding the appeal unlikely to succeed. Docs. 13, 18.

## *II. DISCUSSION*

The Eighth Circuit reviews a "bankruptcy court's factual determinations for clear

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

error, and its legal determinations *de novo*."[22] Here, Cassels raises a purely legal argument, that the bankruptcy court erred in holding it waived the attorney-client privilege, since it is a law firm and not the client.

The parties agree that federal common law controls the application of attorney-client privilege here.[23]

> The attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client. But when an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply.[24]

"[T]he party seeking to assert the privilege . . . has the burden of showing that the privilege applies" (i.e., that an attorney-client relationship existed and that the communications were confidential and related to legal services).[25]

Unlike the work-product privilege, the attorney-client privilege "belongs to and exists solely for the benefit of the client."[26] The privilege survives the death of the client

---

[22] *In re Ungar*, 633 F.3d 675, 679 (8th Cir. 2011).

[23] The bankruptcy court applied federal common law. **Fed. R. Evid. 501** (federal common law governs privilege claims in federal cases involving federal claims); **Fed. R. Bankr. P. 9017** (the Federal Rules of Evidence apply in bankruptcy cases). Cassels's opening brief does not challenge this decision nor raise any choice-of-law arguments. Indeed, Cassels's opening brief states "[q]uestions of privilege in a federal case are typically governed by principles of federal common law." Doc. 7 at 17. Cassels then cites the elements of attorney-client privilege under federal common law, Iowa state law, and Canadian law. In its reply brief, Cassels argues it did not merely cite to Canadian law "but rather maintained throughout that Canadian law applied." Doc. 11 at 5. Then Cassels states the analysis is the same regardless of the choice of law. *Id*. I do not find Cassels adequately raised a challenge to the bankruptcy court's application of federal common law here.

[24] *United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012) (citations omitted).

[25] *United States v. Ivers*, 967 F.3d 709, 716 (8th Cir. 2020); *see also* **Khoday v. Symantec Corp.**, No. CV 11-180, 2013 WL 12140484, at *2 (D. Minn. Sept. 24, 2013).

[26] *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011).

and may be asserted by others on behalf of the client.[27]  Even though the attorney-client privilege does not exist "for the benefit of . . . the attorney," "the attorney has the duty, upon any attempt to require him to testify or produce documents" covered by the attorney-client privilege, to "assert[] . . . the privilege . . . for the benefit of the client" and "as a matter of professional responsibility."[28]

Cassels relies on cases recognizing that the "*client* may waive the . . . attorney-client privilege."[29]  Waiver may be express or implied.[30]  Implied waiver occurs "when a client places the attorney-client relationship directly at issue," such as in a lawsuit against the attorney for malpractice; "when a client asserts reliance on an attorney's advice as an element of a claim or defense;"[31] or by the intentional disclosure of privileged communications (which waives privilege as to the disclosed communications as well as those "on the same subject matter" that "ought in fairness to be considered together").[32]

Cassels argues that only the client may waive the attorney-client privilege, not the attorney as a party to a lawsuit that does not involve the client.  Cassels cites cases generally recognizing the waiver principles discussed above; most of Cassels's cases involve waiver by the client and do not involve the attorney as a party.[33]  I tend to agree

---

[27] *Id.*

[28] *Schwimmer v. United States*, 232 F.2d 855, 863 (8th Cir. 1956).

[29] *Sedco Int'l, S. A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982) (emphasis added).

[30] *Id.*

[31] *Id.*

[32] **Fed. R. Evid. 502(a)**; *see also PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 992 (8th Cir. 1999).

[33] *See Swidler & Berlin v. United States*, 524 U.S. 399 (1998) (addressing whether attorney-client privilege survives death of client); *Schwimmer*, 232 F.2d at 859-60, 864-65 (addressing attorney's motion to quash grand jury subpoena to attorney's storage company to obtain

that only the client, as the holder of the privilege, may implicitly waive the privilege through the actions discussed above (bringing an attorney-malpractice claim, raising an advice-of-counsel defense, intentionally disclosing privileged communications on the same subject matter).[34] The lawyer's authorized actions on behalf of the client may be

---

attorney's confidential client files; holding that three of attorney's clients expressly waived privilege, so grand jury was entitled to their files, unless another of attorney's related clients was implicated such that privilege applied; ordering storage company to provide files to attorney prior to responding to subpoena for attorney to decide whether to assert privilege on behalf of additional clients); *Yielding*, 657 F.3d at 706-07 (rejecting defendant's argument that as the executor of his deceased wife's estate, he could waive attorney-client privilege to use statements she made to her attorneys to "inculpat[e her] and exculpat[e] himself"; upholding wife's attorneys' assertion of the privilege in response to a subpoena); *Henderson v. United States*, 815 F.2d 1189, 1192 (8th Cir. 1987) (when attorney for coconspirator testified that he gave copies of certain discovery materials to defendant, attorney-client privilege did not apply, since the testimony did "not pertain to any confidential communication relating to [the coconspirator's] representation," and defendant "lack[ed] standing" to raise a privilege objection since he was not the client); *Sedco Int'l*, 683 F.2d at 1206-07 (discussing whether client placed attorney advice at issue and waived attorney-client privilege by bringing claim requiring proof of reasonable reliance on defendant's statements); *Union Cnty. v. Piper Jaffray & Co.*, 248 F.R.D. 217, 222-23 (S.D. Iowa 2008) (same); *Wendt v. City of Denison*, No. 16-CV-4130, 2018 WL 1547119, at *2, *4-5 (N.D. Iowa Mar. 29, 2018) (discussing whether city employees' deposition testimony raised advice-of-counsel defense or disclosed contents of privileged communications such that city impliedly waived privilege); *Keefe v. Bernard*, 774 N.W.2d 663, 670 & n.7 (Iowa 2009) (holding that attorney-client privilege did not protect counsel's memorandum of meeting with a witness; additionally noting in footnote that even if attorney-client relationship existed between counsel and witness, "the privilege may have been waived when the memorandum was shown intentionally to [defendant] or when [defendant] gave deposition testimony about the substantive content of the memorandum"); *Squealer Feeds v. Pickering*, 530 N.W.2d 678, 684-85 (Iowa 1995) (insurance company waived attorney-client privilege by designating attorney from underlying administrative proceedings as expert witness), *abrogated on other grounds by Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38 (Iowa 2004).

[34] *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967) ("[T]he 'privilege is the client's, not the attorney's[,]' in the sense that an attorney can neither invoke the privilege for his own benefit when his client desires to waive it nor waive the privilege without his client's consent to the waiver." (citation omitted) (quoting 8 **Wigmore on Evidence § 2321** (McNaughton rev. ed. 1961)); *Compulit v. Banctec, Inc.*, 177 F.R.D. 410, 412 (W.D. Mich. 1997) ("[T]he law firms . . . can[not] waive the privilege because it rests with the client."); 26A **Wright & Miller's Federal Practice and Procedure § 5724** (1st ed. Sept. 2025 update) ("[T]he attorney is given the power to claim the privilege on behalf of the client but his betrayal

attributed to the client for purposes of implied waiver in these instances.[35] But Cassels's cited authorities say nothing on a lawyer's ability (or inability) to "waive" privilege based on a deficient privilege log.

The privilege-log requirement comes from Federal Rule of Civil Procedure 26(b)(5), which provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must:
>    (i) expressly make the claim; and
>    (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

The Eighth Circuit has explained the purpose of the privilege log:

> Whether a document is in fact privileged can be a difficult question, and if the parties engaging in discovery cannot resolve the issue informally, it must be decided by the tribunal conducting the proceeding in which the privilege has been asserted. The party seeking discovery cannot see the allegedly privileged documents—that might waive the privilege—so the dispute is usually resolved by submitting them to the tribunal *in camera.* This is an awkward, time-consuming process. To make the process work, and to encourage parties to minimize the number of documents that must be reviewed *in camera,* [Rule 26(b)(5)] require[s] the party asserting the privilege to provide the party seeking discovery with a list or log that describes the document without disclosing the allegedly privileged communications it contains. . . . Because that log is the basis upon which

---

of the client's secret is not treated as a waiver of the privilege. . . . [D]isclosure of privileged matter by a person other than the holder is not a waiver."); **1 McCormick On Evidence § 93** (9th ed. Feb. 2025 update) ("[S]ince . . . it is the client who is the holder of the privilege, the power to waive it is hers, and hers alone, or her attorney or agent acting with her authority . . . ."); **Restatement (Third) of the Law Governing Lawyers § 79, cmt. c** (A.L.I. 2000) ("Unauthorized disclosure by a lawyer not in pursuit of the client's interests does not constitute waiver [of the attorney-client privilege].").

[35] *See supra* note 34.

the party seeking discovery decides whether to request *in camera* review of a particular document, when the disclosure is inadequate[,] . . . the party seeking discovery must either demand *in camera* review of all documents, or ask the tribunal to require greater disclosure on the log. While this awkward process may seem to present the opportunity for a party to "hide" damaging documents by providing a deceptive or inaccurate privileged document log, inadequacies in the log will become apparent to the tribunal if the party seeking discovery demands *in camera* review of some documents, and stiff sanctions may be imposed on a party whose log is found to be inaccurate or dishonest.[36]

Some courts, like the underlying bankruptcy court decision here, speak in terms of "waiving" the attorney-client privilege by filing an inadequate privilege log.[37] Other courts, however, use language suggesting that by providing an inadequate privilege log, a party "fail[s] to meet its burden to establish . . . attorney-client privilege."[38] Wright and Miller's *Federal Practice and Procedure* has recognized that "much of the discussion of waiver issues" are "'confused,' and . . . properly understood, 'waiver' should not include many problems now handled under that title."[39] The purpose of the attorney-client privilege is "to enable a client to have subjective freedom of mind in committing

---

[36] *PaineWebber Grp.*, 187 F.3d at 992.

[37] *See, e.g.*, **RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.**, 489 F. Supp. 3d 907, 914 (W.D. Mo. 2020) ("A party's delay or outright failure to provide a privilege log can waive the privilege, but does not waive it automatically." (citing **Fed. R. Civ. P. 26(b)(5), advisory committee notes to the 1993 amendment** ("To withhold materials without [notice under Rule 26(b)(5)] is contrary to the rule, subjects the party to sanctions . . . , and may be viewed as a waiver of the privilege or protection."))).

[38] **Nat'l Credit Union Admin. Bd. v. CUMIS Ins. Soc'y, Inc.**, No. 16-CV-139, 2017 WL 4898500, at *6 (D. Minn. Sept. 28, 2017); *cf.* **Rabushka ex rel. U.S. v. Crane Co.**, 122 F.3d 559, 565 (8th Cir. 1997) ("[The party] met its burden of providing a factual basis for asserting the privileges when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its general counsel.").

[39] 8 **Wright & Miller's Federal Practice & Procedure** § **2016.2** n.1 (3d ed. Sept 2025 update).

his affairs to the knowledge of an attorney."[40]  The protection of the attorney-client privilege "'ceases, or is often said to be "waived," when otherwise privileged communications are disclosed to a third party,' because 'such disclosure "destroys the confidentiality upon which the privilege is premised.'""[41]

> Once the holder has "abandoned the secrecy to which he is entitled" under the privilege, he or she shows that they did not require the incentive of the privilege to reveal the secret to their lawyer.  This policy explains several features of the waiver doctrine; e.g., why only the holder can waive, why only a noncoerced disclosure constitutes a waiver, and why knowledge of the privilege is irrelevant to whether disclosure is a waiver.[42]

The requirement to produce a privilege log is better understood as part of the burden of proving privilege, rather than under the waiver doctrine.  Producing a privilege log does not destroy confidentiality such that an intent to "give up" the attorney-client privilege may be implied (as with the implied waiver scenarios discussed above).  Instead, a privilege log allows the opposing party and the court to ensure that the communications claimed as privileged truly are—that they are with an attorney and related to legal advice (as opposed to business advice).  Numerous cases state that the *party claiming privilege* must prove these elements of the attorney-client privilege—not just the client or the holder of the privilege.  In addition, Rule 26(b)(5) requires a privilege log from the "party . . . claiming . . . privilege[]."

Here, Cassels was the party claiming privilege.  Therefore, it had the burden to prove the elements of attorney-client privilege and to produce a privilege log.  The

---

[40] *Schwimmer*, 232 F.2d at 863.

[41] *Neece v. City of Chicopee*, 106 F.4th 83, 98 (1st Cir. 2024) (quoting *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011)).

[42] 26A *Wright & Miller's Federal Practice & Procedure* § **5722** (1st ed. Sept. 2025 update) (footnotes omitted) (quoting California Law Review Commission, **Tentative Recommendation & Study on Article V (Privileges) of the Uniform Rules of Evidence** 261 (1964)).

bankruptcy court recounted the difficulties in making Cassels produce a privilege log—Cassels did so only after violating a court order to produce a privilege log and being held in contempt. Doc. 2-10 at 240-41. The court further noted that even once it had produced a privilege log, Cassels refused to narrow its blanket claim of privilege and instead delivered 7,000 documents to the court for in camera review, "[a] significant portion of [which we]re—on their face—not privileged." *Id.* at 241. The court indicated that even after producing a privilege log ("devoid of any real substance") and being questioned at an evidentiary hearing, Cassels continued to rely on a blanket claim of privilege, providing "no explanatory information about the contents of . . . documents or any indication that the communications were intended to be confidential in the first place." *Id.* at 242. Therefore, the court concluded "Cassels has failed to carry its burden despite numerous opportunities" and "waived its privilege claim." *Id.* Although the bankruptcy court used the term "waiver," read in context, it is clear the court found Cassels had failed to establish that "each of the documents—or any document individually—contained confidential attorney-client communications made for the purpose of receiving legal advice." *Id.* The bankruptcy court's ruling rested on Cassels's failure to prove the existence of attorney-client privilege, rather than on implied waiver.

Cassels does not challenge the bankruptcy court's findings.[43] Instead, Cassels raises the limited argument that it cannot waive attorney-client privilege because it is not the client. Cassels misses that "[a]lthough the client owns the attorney-client privilege, it is still the burden of . . . the party asserting the privilege . . . to prove that an attorney-client relationship existed . . . and that the privilege applied to each withheld document."[44]

---

[43] For example, Cassels does not argue that it made a particularized showing of privilege for some of the documents or that the bankruptcy court should have given it another chance to cure its privilege-log deficiencies.

[44] *Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 463, 467-69 (S.D.N.Y. 2023) (cleaned up) (quoting *Olmos v. David B. Giles P.C.*, No. 22-CV-77-D, 2022 WL 3448641, at *2 (N.D. Tex. Aug. 17, 2022)) (applying Texas law and holding that law firm

None of Cassels cited cases stand for the proposition that a law firm need not produce a privilege log nor prove the elements of attorney-client privilege.

Cassels makes a last-ditch effort to argue that the bankruptcy court's ruling could not have rested on burden. Cassels relies on a bankruptcy court order issued prior to the evidentiary hearing. In the order, the bankruptcy court addresses VBF USA's argument that only the client may raise attorney-client privilege, not the lawyer. Doc. 2-9 at 168-70. The court rejected that argument, concluding:

> [T]here is no dispute that Cassels did work for VBF Canada, that the privilege attached to those communications, that it "permanently protected" those communications, and that VBF Canada has not waived that protection. Thus, the Court concludes that Cassels has properly asserted the attorney-client privilege.

*Id*. at 170. Cassels takes this excerpt out of context. In the order, the bankruptcy court

---

failed to prove existence of attorney-client privilege for subpoenaed documents when law firm relied on "conclusory" assertions of privilege, court lacked explanation of law firm's relationship to people in the documents, and court lacked "evidence explaining these documents and the information contained therein" to show most documents were privileged after its in camera review—despite providing law firm "multiple opportunities" to meet its burden—and requiring law firm to produce most subpoenaed documents); *see also* **In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC**, 333 F.R.D. 291, 295-96 (D.D.C. 2019) (holding that law firm failed to satisfy its burden to prove attorney-client privilege by relying on "blanket claim of privilege" and ordering it comply with subpoena and produce documents claimed as privileged); **In re Universal Serv. Fund Tel. Billing Pracs. Litig.**, No. 02-1468, 2006 WL 8440450, at *1, *3-7, *11 (D. Kan. Oct. 4, 2006) (holding that for some subpoenaed documents, law firm "failed to provide the court with adequate information" in privilege log to show attorney-client relationship and that documents must therefore be produced; like the bankruptcy court, the court used the term "waiver" at times even though its ruling actually appeared to rest on burden); *but see* **Baranski v. United States**, No. 4:11-CV-123, 2012 WL 425007, at *5 (E.D. Mo. Feb. 9, 2012) (holding that law firm was not excused from privilege-log "requirements even though it is not the holder of the privilege" and finding that it "ha[d] not met its burden to adequately assert the privilege with respect to each category of documents[] and to provide a privilege log"; but because a law firm "cannot waive" privilege on behalf of a client, finding it "not appropriate" to order production of the documents claimed as privileged and instead ordering the law firm produce a privilege log; this case could be distinguished since it did not involve repeated failures to produce an adequate privilege log).

13

did not make a finding on whether Cassels met its burden of proving that the documents were confidential or that they related to Cassels's attorney-client relationship with VBF Canada. Instead, the bankruptcy court simply found Cassels had "standing" to raise attorney-client privilege.

I recommend rejecting Cassels's argument that seeks to allow a law firm to raise a blanket claim of attorney-client privilege without having to produce a privilege log or otherwise establish that the elements of the attorney-client privilege have been satisfied. The bankruptcy court gave Cassels numerous opportunities to correct its privilege-log deficiencies, and Cassels instead clung to its position that it could not be ordered to produce the documents because it was the law firm and not the client. I recommend affirming the bankruptcy court's decision.

### III. CONCLUSION

I recommend **AFFIRMING** the bankruptcy court's decision and entering judgment in favor of Appellee VBF USA, Inc.

**SO ORDERED** on January 8, 2026.

_____
Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa